Good morning and may it please the court. Emily Grondyke on behalf of Rogelio Fuentes. When the police threatened Mr. Fuentes, his entire family, his pregnant girlfriend, and his unborn child, it's undisputed that they overbore his will and coerced his confession. Does it matter that the subsequent confessions were made to somebody other than police officers? Your Honor, that is one of the factors that should be considered among the totality of the circumstances, but here I think the nature of the threat that Mr. Fuentes sustained is also relevant to that consideration. That is, when he was in the room being threatened by Officer Nieves, it was not simply threats to his own safety that he was undergoing. Officer Nieves was also threatening his family, his future child, and his pregnant girlfriend. So the fact that Officer Nieves then stepped out of the room would not tend to dissipate that threat. Nothing about that would make him less able to go and arrest those people who were not currently present or the girlfriend who was currently present, and nothing about him stepping out of the room would render the threat to call CPS and have his child taken away any less potent to Mr. Fuentes. The only question here is whether the State Court's decision that Mr. Fuentes shook off that coercion in a matter of minutes, was that reasonable? The transcript of the interrogation demonstrates that the State Court made several unreasonable findings of fact and also made an unreasonable application of clearly established federal law. I find this a very difficult case, but it seems to me that there are profound implications. About the overbearing of will. I mean, time is an issue. There was a short period of time, I understand that. But being the father of a child with a girlfriend and the father-mother relationship is mediating. It's not as though somebody's will was overborne, they remain in custody, and are then asked by other police officers, you know, sort of Kafkaesque, and that's when false confessions seem to come into play. It seems to me that the circumstances of the confessions to whom the people, that the circumstances in the relationship between the defendant and the persons to whom the confessions were made has to bear to some extent upon the issues. Yes, Your Honor, it does bear to some extent. But the other factors that the court has counseled bear are the location. And in this instance, Mr. Fuentes was still in the same interrogation room when he spoke with his girlfriend. He was still – Not that it matters. I thought he moved rooms, but it doesn't matter. He was in the interrogation room when he spoke to his girlfriend. He was in the booking area when he spoke with his mom. That doesn't speak to me. I agree with you. Okay. One of the problems, as Judge Matz pointed out, is this is not a confession to a law enforcement officer. And we're under EDBA, as you know, and we need a – to rule in your favor, we would have to find a clearly established Supreme Court law that this was an unreasonable application of. What – where do you base your – base clearly established law as to a subsequent confession to a non-law enforcement officer? Well, Your Honor, the Supreme Court in Lyons v. Oklahoma set forth the general rule, which is after one coerced confession, courts are to evaluate subsequent confessions with the simple question of, is it voluntary? They did not restrict that to subsequent confessions to law enforcement or subsequent confessions to the same officer. The court, for example, in Arizona v. Fulminante evaluated confessions that were coerced by an undercover informant. In that case, they found that one of the confessions was coerced, and then they evaluated and found that a subsequent confession to a third party was not coerced, but the evaluation was the same. I'd also direct the court to the Third Circuit decision in Lamb v. Kelschner, which was assessing the same clearly established federal law, and that related to a confession to, again, undercover agents, and then to a third party unaffiliated with the police. And in that case – Does the Supreme Court say we look to a clearly established circuit precedent or a clearly established Supreme Court precedent? It is clearly established Supreme Court precedent, Your Honor. That's a lie. But the Third Circuit in that case found that it was unreasonable application of clearly established Supreme Court precedent to think that a subsequent confession was not under the influence of that coercion. So it granted relief even in a case under AEDPA. But, Your Honor, I'd also urge the court to consider D-2 in this case. That doesn't have a clearly established federal law requirement if this court finds that there were unreasonable findings of fact in the state court decision. And in this case, there were several unreasonable findings of fact. For example, the state court based its decision that the mood of the room had changed and that the interrogation was over solely on Officer Nieves' testimony that by the time Mr. Fuentes spoke with his girlfriend and with his mother, the two of them, the officer and Mr. Fuentes, were having casual conversations about living in Mexico, and that's how it was clear that the interrogation ended. The transcript of the interrogation demonstrates that's not true. In fact, right before Mr. Fuentes spoke with his girlfriend, Officer Nieves was interrogating him about where items stolen from the house had been stashed. Officer Nieves said he would briefly step away, that he would be right back to clear things up. And then after Mr. Fuentes spoke with his girlfriend, he did come right back and went right back into talking about the murder weapon, where it was found, the details of the homicide. Those before and after are topics traditional to interrogation, not casual conversation. It's also noteworthy that the references to Mexico that Officer Nieves claimed were casual were not casual at all. The last thing that was said about Mexico was this. Aracely told me she got pregnant in Ensenada. See, I know a whole lot, dude. Don't mess with me, man. Do you want me as your enemy? Now, that's not a casual conversation. That's a threat. So state courts, using these purportedly casual conversations that preceded the confessions The factual area that you're asserting, that the mood had changed or that the interrogation had ended, or both? Both, Your Honor. I think the transcript shows that the interrogation continued before and after the confession that Mr. Fuentes made to Aracely. As I mentioned before, they were talking about traditional topics of interrogation. Where was the murder weapon found? Where did you stash it afterwards? How did you kill him? When did you kill him? How did you know he was dead? That's all interrogation. That's not casual conversation. Those aren't booking questions. But it's also the case that the state court explicitly relied on the idea that the mood in the room had changed and it was a casual and comfortable one. And the transcript shows that's not true either. Again, those references to Mexico were anything but casual. They were threatening. Another fact that the state court relied on was the idea that Mr. Fuentes himself initiated these conversations. But the transcript demonstrated that throughout his coercive interrogation of Mr. Fuentes, Officer Nieves was actually suggesting that Mr. Fuentes should talk to those people. He said, you need to tell Aracely the truth.  So all of that woven in with his other threats, his other promises, were part of the coercive nature of his interrogation. So the state court's finding that Mr. Fuentes initiated this of his own free will ignored the fact that Nieves had suggested it and that Mr. Fuentes never agreed with that suggestion until after his will had been overborne. It's even more apparent regarding the confession to his mom which was initiated in this way. Officer Nieves said, are you going to tell your mom what you did? Then and only then did Mr. Fuentes say, yes, you should call her. So the idea that Mr. Fuentes, whose will had already been overborne, that's undisputed, was acting of his own free will when he agreed to things that officer On that point, is it undisputed that his will was overborne or that the officer Nieves had used improper questioning? I mean, it's a small difference, but I'm not sure. Is it clear that his will was overborne? Well, the trial court who watched the video found that the confession could not be admitted. Well, that I totally agree with. I mean, I understand that. But that's different from saying that the will was overborne. It was that the police interrogation was improper enough to suppress the evidence. Well, Your Honor, the court made that on the basis of the improper interrogation, but the only question on the table was whether it was involuntary. Counsel, Judge Gould, if I could interject a question for you. Yes, Your Honor. This may be too specific to be fruitful, but that's one of the dangers or consequences of the ADPA. So my question is, is there any Supreme Court precedent that is specifically dealt with a confession first coerced confession, coerced by law enforcement, but a subsequent admission or confession to people like this guy's girlfriend, who is also the mother of his unborn child or his mother? Your Honor, I'm not aware of a case from the Supreme Court that deals with that. However, the Supreme Court precedent, which both parties discussed in their briefs, includes as one of the factors a change in the person that's being spoken with. So it seems to assume the possibility that the defendant would not be in the room with the same people. That's one of the factors, along with lapse of time, change in location, et cetera. Another one of the factors that the Supreme Court has set out and the State Court failed to consider is whether there was any basis to understand that the threat had been removed. And in this case, there's no evidence in the record that Mr. Fuentes would have believed the threat had been removed. Again, no one intervened to say, your family, we will be okay. We're not going to arrest them. We're not going to call CPS. In a matter of a few minutes, Officer Nieves was still controlling Mr. Fuentes. And so there was no evidence that the threat had been removed. And the State Court failed to consider the evidence in the record offered by defense witness Professor Offshee that, in fact, all of the threat would still be in effect, and that Mr. Fuentes would have felt incentivized to continue with the so-called deal that he made with Officer Nieves, which is confessing. Did the defendant show where the stash was? I'm not clear from the record. And if so, why did the State agree implicitly not to introduce that fact? The record's a little bit unclear. The transcript includes some discussion of some references. And the defendant said, oh, I stashed the things near the water. It then came out at a 402 hearing about this. The goods weren't found anywhere near the water. So on the basis of the transcript, it's unclear. But the stolen items were found. And the parties seemed to understand that they had been found on the basis of Mr. Fuentes' confession. And it was suppressed on that basis? Yes, Your Honor. And, well, I state why they didn't introduce it. They did not seek to introduce the confession to Officer Nieves or the items found there from, because of the coercive nature of that confession, that interrogation. And that was addressed only in Officer Nieves' interrogation? Yes, Your Honor. Do you want to save some time for rebuttal? Yes, Your Honor. Thank you, Your Honor. I'll save my remaining time for rebuttal. Good morning, Your Honor. May it please the Court. I'm Kevin Viena, California Deputy Attorney General, on behalf of the appellee respondent in this matter. Your Honor, with regard to the last question about recovery of items that were stolen from the home, some of them, but not all of them, were found. A few, but not all, were found. Included among those items that were found was a knife that apparently was the weapon used to attack the victim. But that, you know, regardless of differences, that would clearly be through the poison street. Yes. And consequently, the district attorney from the very beginning didn't contest that there had been an improper interrogation, and that improper interrogation led directly with no intervening circumstance to the recovery of that property. So the district attorney didn't seek to introduce that. Are you contesting the fact that the improper interrogation overbore the will of the defendant? I think we can't climb inside his mind, but I think that's inherent in the State Court's determination that the initial confession was not admissible. All right. So the question then is solely whether the confessions to the girlfriend and the mother were admitted in violation of or constituted an unreasonable application of established Supreme Court law? I think that is the correct question, Your Honor. I would disagree in part with a statement by Ms. Grondyke, who has done a fine job here, but she suggests that this can be a D-2 evaluation, that this decision can be based on an unreasonable determination of fact. I think the law is clear that the question of voluntariness is a mixed question, and so that D-1 is the applicable statutory provision. I think that's true, but I think you still could find that there were erroneous factual determinations. And there clearly is one, I think, erroneous statement by the State Court suggesting that the discussion – suggesting, I think, accurately. What about the district court? You know, the district court made the same error with regard to when the chronology of the discussion of life in Mexico with Mr. Fuentes. It did not immediately proceed, or it didn't follow his confession or his admission that he had been in the house and committed the crime and then saw her as selling it. It was well before then, before he had admitted his guilt.  Yes, and we conceded that in our brief, that the discussion of Mexico occurred before, and I think it's fair to say well before he finally changed his mind and admitted that he didn't engage in the crime. It's not material to the issues that have to be decided, but curiosity is curiosity. What sentence did he receive? He was sentenced to life without possibility of parole because the special circumstances that apply. Well, as to the question of whether it's an unreasonable application of established Supreme Court law, why don't you address that? Well, my answer to that question is that the Supreme Court precedent that applies leads to semi-structured decision-making. That is, there's certainly no bright-line rule. For example, Miranda. If you don't get the Miranda warnings, you can't use the statements. There's no such rule in this case. There are general principles to be applied on which we agree, a temporal, a geographical element. But the key is whether something happened that attenuated the taint of the earlier improper questioning by the officer. And the obvious and critical circumstance in this case is that he was no longer talking to the police. In fact, he wasn't being interrogated at all in terms of Rhode Island v. Innis. He was speaking not to an agent of the police, not to someone who was a citizen of the police. He was speaking to his girlfriend and then about a half hour later to his mother. And we think, the Supreme Court, I think, at Brown also makes clear that no one of those factors is necessarily determinative of the outcome. Consequently, when the Supreme Court's principles are general, the State court is to be accorded greater leeway in interpreting and applying that law. What about the fact that it is Supreme Court precedent to which we look, but to the extent that the Supreme Court has articulated a general proposition and the Third Circuit has applied that under factually analogous circumstances, Third Circuit law can be looked to? I think that's incorrect. I think it's improper to look at circuit precedent for the question of whether something is a reasonable or unreasonable application of the law. I think that's exactly the issue that was before the Ninth Circuit in Marshall v. Rogers. And I think the Supreme Court was clear on that. You can't use circuit precedent to evaluate reasonableness. Let me ask you, if we had a case in which we evaluated something as being unreasonable and published an opinion and said that's an unreasonable application, and a month later we had the identical case, would we have to ignore the fact that we had already decided? No, I don't think so. I don't think that's correct, Your Honor. And after Marshall v. Rogers, an opinion that we cite, I think the name of it is Biggs, but Biggs says that the normal rules of circuit precedent would apply, but for it to apply it would have to be precisely on point. That is, I think it would have to be the same rule, the same issue, and facts that are very closely associated. If I could just interject on that point. We would have to follow the circuit precedent that we had established the month before. The Supreme Court would not have to give that any weight in their analysis if they were trying to determine if the decision was correct in view of Supreme Court precedent. I don't disagree with that, Your Honor. So back to your distinguishing this, you say there are three factors, length of time, geography, where it takes place, intervening factors I think is sort of broadly discussed, and I think the Supreme Court hasn't looked at whether a family member is an adequate or sufficient intervening factor. Length of time is not on your side. Probably not. I mean, certainly not with Araceli. The girlfriend, that occurs immediately after he has confessed. The mother's approach is about a half an hour later and in a different place. I think that's a closer question. In the same police station. In the same police station, yes, Your Honor. So those two factors don't seem particularly helpful to you. I don't dispute that. But I think the factor that matters is we have not the same interrogator. In fact, we don't even have a police interrogator. In fact, we don't have someone who outside an unusual circumstance is not an agent of the police. We have a family loved one. And I think that's the question, that's the fulcrum on which this turned in the State Court. But why should it? I mean, if you have, why isn't that? I realize the defendant says it's not the fruit of the poisonous tree. But if you have an improper coercive interrogation, why does it end the fellow is still in police custody? Why should it make a difference to whom he makes the confession? I think the answer to that question is this. When he said to Araceli and then to his mother, was there something that overbore his free will or were his statements the exercise of his free will? And because he loved them and because he was concerned about, because he clearly wanted to be the one to admit to them that he had done something horrible in his life, it wasn't a question of his will being overborne. It was perfectly consistent with his will. He wanted to tell them. Now, I mean, I suppose we often, well, I think we lawyers, anyway, say why would anyone ever confess? I mean, it doesn't, it rarely seems to be knowing, I mean, knowing involuntary in a lay sense, why would anyone confess? But we know that people confess because they have. No, I'm not concerned about that. I'm concerned about improper use of state power. I mean, if a police officer does this to somebody and what, you know, the natural thing may be, look, I'm going to stand up and it's unresolved. I know, you know, I'm going to confess to it and to loved ones and not to the officer. I mean, I was the one who raised, you know, I mean, I do see the distinction and I think it's an important distinction that you're not making the confession to an officer. I understand that. But still, why should it make a difference? Well, I think why should it make a difference is quite simply this. The Supreme Court has said that if the subsequent admissions or confessions are voluntary, then the law doesn't require their exclusion. But how can you say that they're voluntary when they follow shortly in the same timeframe and while still in police custody, why isn't it voluntary? I guess what I would say in this case is that the coercive effect from Sergeant Nevis really had evaporated when Fuente says, yes, I did it. And because while it was improper, often and flagrantly and frequently improper for Nevis to say, if you don't tell me the truth, then I may have to look at your family members for the crime of harboring a fugitive. If you don't tell me the truth and I have to look at your family members, perhaps Araceli will have to give up custody of her child. All of that had evaporated because Fuentes had told the truth. So those ---- He told the truth that the government wanted. He told the facts that the government wanted. Well, I think he confirmed what the government could clearly see. The evidence in this case was very strong against him. I mean, I think it was very strong. That is ---- No, I know, I know. I look quizzical, but I understand. All right. I thank the Court for its questions and patience. I've made the points that I hope to make if there are no other questions. Thank you very much. You're welcome, Your Honor. Thank you. Katherine, the overborn question and the effect that that had on the fact that he told his girlfriend and his mother, ultimately he would have had to tell his girlfriend and his mother that he had confessed, wouldn't he? No, Your Honor, not necessarily. There's no reason that he would necessarily have. I think the question here ---- If he had told them two days later, one day later, when he was back home and said, you know, I want you to know I confessed. Well, that's a number of different circumstances, Your Honor. It's a different place. It's a much greater lapse of time. So it might be possible that under those, in the totality of the circumstances then, we might think that would be a voluntary confession. But here, when we're looking at the circumstances and specifically to your questions about the identity of the person he was speaking with and how is that relevant, I think the question to ask is that if a police officer threatened you, threatened your family and your child, and you believed it, it's undisputed that you believed it, how quickly do you get over that and do you forget about that when that officer leaves the room? Have you shaken that off 15 or 20 minutes later? We're talking about human nature. Why wouldn't you tell your mother I confessed because of this? I don't know, Your Honor, and I can't answer that question. But all I can answer is that it's undisputed that he was coerced into confessing the first time and that many of the factors hadn't changed. Going briefly to the D-2 question, the warden dismisses as chronology this question about the discussion of Mexico, but that is the only fact that the state court cited in terms of the mood of the room. And it's the only fact that Officer Nieves cited. So the fact that that's demonstrably false is important. It's not mere chronology. It's not a quick mistake that can be cleaned up. Finally, I'd just note that the evidence in this case was not strong. It was considered circumstantial. The prosecutor relied heavily on the prosecutions and on the confessions, I mean. And even with two confessions admitted at this trial, the jury sent the judge a note saying that it might hang. So the admission of these confessions, it was certainly harmful to this case, because absent them, it was an entirely circumstantial case. Unless there are further questions. Thank you, counsel. Thank you both very much. They were really good arguments and interesting issues.
judges: Motz, Reinhardt, Gould